**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-62693-BLOOM/Valle**

ABS-CBN CORPORATION, *et al.*,

      Plaintiffs,

vs.

ABSCBNPINOY.COM, *et al.*,

      Defendants.
_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Preliminary Injunction, ECF No. [5] ("Motion"). The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised.

By the instant Motion, Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., d/b/a Star Cinema, and ABS-CBN International ("Plaintiffs") move, for entry of a preliminary injunction against Defendants[1] for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the Copyright Act, 17 U.S.C. § 101 *et seq*.

The Court held a telephonic hearing on November 13, 2019, which was attended by counsel for Plaintiffs only. During the hearing, Plaintiffs directed the Court to evidence supporting the Motion for Preliminary Injunction. Nevertheless, none of the Defendants formally responded to the Motion, nor have they made any appearance or filing in this case, either individually or through

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants")

counsel. Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, the Court grants the Motion.

## I.     FACTUAL BACKGROUND[2]

Plaintiff ABS-CBN International is the registered owner of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "ABS-CBN Registered Marks"):

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 036 – telephone calling card services<br><br>IC 038 – Television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Television broadcasting services via satellite and cable<br><br>IC 041 – Production and programming of television shows, entertainment and a variety of programming distributed over television, satellite and via a global computer network |

*See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 5; ECF No. [1-2] (containing Certificates of Registrations for the ABS-CBN Registered Marks at issue). ABS-CBN Registered Marks are used in connection with the creation and distribution of quality entertainment content in the categories identified above. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4-5.

Plaintiff ABS-CBN International is further the owner of all rights in and to the following common law trademark (the "ABS-CBN Common Law Mark"):

---

[2] The factual background is taken from Plaintiffs' Complaint, ECF No. [1], Plaintiffs' Motion, ECF No. [5], and supporting evidentiary submissions. Plaintiffs filed declarations and exhibits annexed thereto in support of their Motion. The declarations are available in the docket at the following entries: Declaration of Elisha J. Lawrence, ECF No. [5-1], and Declaration of Christine Ann Daley, ECF No. [5-2].

Case No. 19-cv-62693-BLOOM/Valle

| **Trademark** |
|:---:|
|  |

*See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 6. The ABS-CBN Common Law Mark is used in connection with the creation and distribution of quality entertainment content. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 6. Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law Mark are referred to as the "ABS-CBN Marks." Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International share exclusive rights in and to the ABS-CBN Marks. Moreover, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International are all licensed to use and enforce the ABS-CBN Marks. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 6.

Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies specifically identified in Exhibit 2 to the Complaint, ECF No. [1-3]. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4. Moreover, Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights, including but not limited to those specifically identified in paragraph 26 of the Complaint and in Exhibit 3 thereto, ECF No. [1-4]. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4. Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN Film Productions, and ABS-CBN International all share exclusive rights in and to the Copyrighted Works. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4.

Defendants, through the various Internet websites operating under their domain names identified on Schedule "A" hereto (the "Subject Domain Names") have advertised, promoted, offered for distribution, distributed and/or publicly performed the Copyrighted Works under what Plaintiffs have determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the ABS-CBN Marks. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 12-15; *see also* Declaration of Christine Ann Daley, ECF No. [5-2] at 2; and Exhibit 3 to the Complaint, ECF No. [1-4].

Although each Defendant may not copy and infringe each of Plaintiffs' trademarks for each category of services protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the ABS-CBN Marks and the Copyrighted Works at issue. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 12-15, Exhibit 3 to the Complaint, ECF No. [1-4]. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the of the ABS-CBN Marks and/or perform or distribute the Copyrighted Works. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 12-15.

As part of its ongoing investigation regarding the infringement of its intellectual property, on behalf of Plaintiffs, Stephen M. Gaffigan, P.A. performed an investigation into the advertising accounts used by Defendants. *See* Declaration of Christine Ann Daley, ECF No. [5-2] at 5. By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names,[3] Stephen M. Gaffigan, P.A. was able to specifically

---

[3] The Subject Domain Names gmanetwork.su (Defendant Number 5), pinoylambinganako.su (Defendant Number 5), and pariwiki.ch (Defendant Number 14) use the supporting domain name playbox.xyz to frame advertisements on the respective Subject Domain Names. The Subject Domain Names iwanttv.su (Defendant Number 8), pinoylambingantvhd.su (Defendant Number 8), and lambingansutv.com (Defendant Number 11) use the supporting domain name biggboss123.me to frame advertisements on the respective Subject Domain Names. This is believed to be done to avoid violating the terms and services agreement of their advertising companies for infringing Plaintiffs' and others' trademarks and copyrights.

locate and identify many of the advertising revenue accounts of the Defendants, which are identified on Schedule "B," along with Defendants' associated e-mail addresses as identified in the publicly available domain name registration data for Defendants or directly on Defendants' websites operating under the Subject Domain Names. *See* Declaration of Christine Ann Daley, ECF No. [5-2] at 3, 5 n.2. Plaintiffs' representative conducted a review of and visually inspected the Internet websites operating under the Subject Domain Names or the web page captures of the Subject Domain Names and determined the distribution services offered by Defendants were not genuine or authorized distribution services of Plaintiffs' Copyrighted Works. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 13-15.

On October 29, 2019, Plaintiffs filed their Complaint, ECF No. [1], against Defendants for trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, common law trademark infringement, and direct and contributory infringement of copyright. On October 29, 2019, Plaintiffs also filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [5]. On October 31, 2019, this Court entered a sealed Temporary Restraining Order, enjoining Defendants, from, among other actions, continuing to advertise, promote, distribute and publicly perform the Copyrighted Works using counterfeits, reproductions, and/or colorable imitations of the ABS-CBN Marks. The Temporary Restraining Order also directed the advertising services as identified on Schedule "B" hereto to identify and restrain funds in payment accounts associated with Defendants and to divert those funds to a holding account. Pursuant to the Court's October 31, 2019 Order, Plaintiffs served Defendants with a copy of the Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order,

---

*See* Declaration of Christine Ann Daley, ECF No. [5-2] at 5 n.1, and Composite Exhibit 2 thereto.

Preliminary Injunction, and Order Restraining Transfer of Assets, and the Court's October 31, 2019 Temporary Restraining Order, thereby providing notice and copies of the October 31, 2019 Temporary Restraining Order and Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets via email to each Defendant's corresponding email/online contact form, and by posting copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at http://servingnotice.com/BSNL4U/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant, ECF Nos. [16], [17], and [18].

## II. LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## III. ANALYSIS

The declarations Plaintiffs submitted in support of its Motion for Preliminary Injunction support the following conclusions of law:

A.  Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, distribution and public performance of the Copyrighted Works using counterfeits, reproductions, and/or colorable imitations of the ABS-CBN Marks, and that the services Defendants are offering and promoting are unauthorized distribution services using the ABS-CBN Marks;

  B. Because of the infringement of the ABS-CBN Marks and Copyrighted Works, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiffs' Complaint, Motion for Preliminary Injunction, and accompanying declarations on file, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers because it is more likely true than not that:

  1. Defendants own or control Internet websites, domain names, or businesses which advertise, promote, and/or offer distribution services using counterfeit and infringing trademarks and infringe the Copyrighted Works in violation of Plaintiffs' rights; and

  2. There is good cause to believe that Defendants will continue to violate Plaintiffs' intellectual property rights and offer more distribution services of copyrighted content under counterfeit and infringing versions of Plaintiffs' trademarks; that consumers are likely to be misled, confused, or disappointed by the quality of these services; and that Plaintiffs may suffer loss of sales for their genuine services and an unnatural erosion of the legitimate marketplace in which they operate

  C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded services if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their reputations, and goodwill as a manufacturer and distributor of quality entertainment content if such relief is not issued; and

  D. The public interest favors issuance of the preliminary injunction in order to protect Plaintiffs' trademark and copyright interests and protect the public from being defrauded by the palming off of counterfeit services as Plaintiffs' genuine services.

  E. Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable

remedy, the illegal profits gained through Defendants' distribution of and profits from services using counterfeits and infringements of the ABS-CBN Marks and Copyrighted Works. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.  Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (citing *Fed. Trade Comm'n v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.  In light of the inherently deceptive nature of the piracy business, and the likelihood that Defendants have violated federal trademark and copyright laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.   CONCLUSION

Accordingly, after due consideration, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [5]**, is **GRANTED** as follows:

(1)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are enjoined and restrained until further Order of this Court:

> a.  From advertising, promoting, copying, broadcasting, publicly performing, and/or distributing any of the Plaintiffs' content or copyrighted works, including but not limited to those works specifically identified in paragraph 26 of the Complaint, Exhibit 2 to the Complaint, ECF No. [1-3], and/or Exhibit 3 to the Complaint, ECF No. [1-4];

      b. From advertising, advertising, promoting, offering, distributing, using, and/or causing to be advertised, promoted, offered and/or distributed, any services using the ABS-CBN Marks, or any confusingly similar trademarks, other than those actually offered or distributed by Plaintiffs; and

      c. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any evidence relating to the promotion, advertisement, procurement, and/or distribution of services or copyrighted content bearing or under the ABS-CBN Marks, or any confusingly similar trademarks or public performances or distributions of Plaintiffs' Copyrighted Works; (ii) any assets or other financial accounts subject to this Order, including assets held by any advertising services, including but not limited to those identified on Schedule "B" hereto, in the actual or constructive possession of, or owned, controlled or held by, or subject to access by, any of the Defendants, including but not limited to any assets held by or on behalf of any of the Defendants.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the ABS-CBN Marks or any confusingly similar trademarks, on or in connection with all Internet websites, domain names, or businesses owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the ABS-CBN Marks and/or the names of the Copyrighted Works, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to websites registered, owned, or

operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4) Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

(5) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(6) Upon Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose, to the extent not already done, to Plaintiffs the true identities and contact information of those registrants;

(7) The domain name registrars for the Subject Domain Names shall immediately, to the extent not already done, assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiffs' choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain (TLD) registries, for the Subject Domain Names, or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain

names which such registries have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/BSNL4U/index.html whereon copies of the Complaint, this Order, and all other documents on file in this action are displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendants;

(8)   Upon receipt of notice of this Order, Defendants and the advertising services, networks and/or platforms identified on Schedule "B" hereto (the "Advertising Services"), and all financial institutions, payment processors, banks, escrow services, and/or money transmitters, and their related companies and affiliates, shall, to the extent not already done, immediately identify and restrain all funds, as opposed to ongoing account activity, in the advertising accounts related to Defendants, and their associated payment accounts and e-mail addresses, as identified on Schedule "B" hereto, as well as all funds in or which are transmitted into (i) any other accounts of

11

the same customer(s); (ii) any other accounts which transfer funds into the same financial institution/advertising account(s), and/or any of the other accounts subject to this Order; and (iii) any other financial institution/advertising accounts tied to or used by any of the Subject Domain Names identified on Schedule "B" hereto; and (iv) immediately divert those restrained funds into a holding account for the trust of the Court;

(9) Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, the Advertising Services identified on Schedule "B" hereto, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or advertising service, including but not limited to the Advertising Services identified on Schedule "B" hereto, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(10) This Order shall apply to the Subject Domain Names, associated websites, and any other domain names, websites, corresponding websites' URLs, financial accounts, or advertising services accounts properly brought to the Court's attention and verified by sworn affidavit that such new domain names are being used by Defendants for the purpose of counterfeiting the ABS-

CBN Marks, infringing the Copyrighted Works, or unfairly competing with Plaintiffs on the World Wide Web;

(11) Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(12) As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action, or as to which Plaintiffs have withdrawn their request for a preliminary injunction;

(13) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(14) Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Advertising Services as identified on Schedule "B" hereto, shall, to the extent not already done, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with Defendants' respective advertising accounts and/or Subject Domain Names;

(15) This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

Case No. 19-cv-62693-BLOOM/Valle

**DONE AND ORDERED** in Chambers, at Miami, Florida, on November 13, 2019.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

Case No. 19-cv-62693-BLOOM/Valle

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Def. No. | Domain Name |
|---|---|
| 1 | abscbnpinoy.com |
| 2 | Europixhd.com |
| 3 | fullasiantv.com |
| 4 | fulltagalogmovies.me |
| 5 | gmanetwork.su |
| 5 | pinoylambinganako.su |
| 5 | playbox.su |
| 6 | hdfullpinoymovies.com |
| 7 | hdreplay.su |
| 7 | pinoylambinganteleserye.su |
| 8 | iwanttv.su |
| 8 | pinoylambingantvhd.su |
| 9 | kidstva.co |
| 10 | lambinganpinoytambayantv.su |
| 10 | pinoytambayanlambingantv.su |
| 10 | pinoytvtambayanlambingan.su |
| 10 | tambayanatlambingan.su |
| 11 | lambingansutv.com |
| 11 | movierulz.stream |
| 12 | ofwpinoytvshows.su |
| 12 | pinoybaytv.su |
| 12 | pinoylambinganflix.su |
| 12 | pinoylambinganreplays.su |
| 12 | pinoylambinganteleserye.net |
| 12 | pinoytvhd.su |
| 12 | tambayanreplay.su |
| 13 | ofwshow.ru |
| 14 | pariwiki.ch |
| 15 | pinoyflixreplay.su |
| 16 | pinoyhdonline.su |
| 17 | pinoyhdreplay.ch |
| 18 | pinoymoviepedia.ru |
| 19 | pinoymovieshub.tv |
| 20 | pinoyreplaytv.su |
| 21 | pinoyteleseryes.su |
| 22 | pinoytoday.su |

15

| Def. No. | Domain Name |
|---:|---|
| 23 | pinoytv.re |
| 24 | pinoytvchannelreplay.su |
| 25 | pinoytvrecap.su |
| 26 | pinoytvtime.su |
| 27 | politicsslashletters.live |
| 28 | siliptv.su |
| 29 | sinepinoy.info |
| 30 | thepariwiki.com |
| 31 | verystreamtv.com |

Case No. 19-cv-62693-BLOOM/Valle

## SCHEDULE "B"
### DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES/PAYPAL ACCOUNTS

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 1 | abscbnpinoy.com | N/A | N/A | fiazrasool05@gmail.com |
| 2 | Europixhd.com | N/A | N/A | 6e29f11be8db4e629157e9c87e9bc967.protect@whoisguard.com |
| 3 | fullasiantv.com | Google Adsense, Google LLC | ca-pub-3821092466638318 | f44499b1ff774de48e53a9d095329d94.protect@whoisguard.com |
| 4 | fulltagalogmovies.me | popads.net Tomksoft S.A. | 3538361 | Not listed |
| 5 | gmanetwork.su (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | waqarkhanmalghani@gmail.com |
| 5 | pinoylambinganako.su (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | waqarkhanmalghani@gmail.com |
| 5 | playbox.su | N/A | N/A | waqarkhanmalghani@gmail.com |
| 6 | hdfullpinoymovies.com | N/A | N/A | 6842447@whoisprotection.biz |
| 7 | hdreplay.su | N/A | N/A | cashorika@gmail.com |
| 7 | pinoylambinganteleserye.su | N/A | N/A | cashorika@gmail.com |
| 8 | iwanttv.su (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | pinoymovies.su@gmail.com |
| 8 | pinoylambingantvhd.su (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | pinoymovies.su@gmail.com |
| 9 | kidstva.co | Google Adsense, Google LLC | ca-pub-5302215400293420 | admin@aliwan.info |
| 10 | lambinganpinoytambayantv.su | Google Adsense, Google LLC | ca-pub-1593569282303938 | paktvsite@gmail.com |

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 10 | pinoytambayanlambingantv.su | Google Adsense, Google LLC | ca-pub-2154317906897324 | paktvsite@gmail.com |
| 10 | pinoytvtambayanlambingan.su | Google Adsense, Google LLC | ca-pub-2154317906897324 | paktvsite@gmail.com |
| 10 | tambayanatlambingan.su | N/A | N/A | paktvsite@gmail.com |
| 11 | lambingansutv.com (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | Not listed |
| 11 | movierulz.stream | popads.net Tomksoft S.A. | 3603072 | abuse@movierulz.stream |
| 12 | ofwpinoytvshows.su | Google Adsense, Google LLC | ca-pub-3388398459928305 | javirock906@gmail.com |
| 12 | pinoybaytv.su | Google Adsense, Google LLC | ca-pub-6052202555377760 | javirock906@gmail.com |
| 12 | pinoylambinganflix.su | Google Adsense, Google LLC | ca-pub-1256604383590629 | javirock906@gmail.com pinoylambinganflix@gmail.com |
| 12 | pinoylambinganteleserye.net | Google Adsense, Google LLC | ca-pub-1715847515243954 | javirock906@gmail.com |
| 12 | pinoytvhd.su | Google Adsense, Google LLC | ca-pub-7772575731834210 | javirock906@gmail.com |
| 12 | pinoylambinganreplays.su | N/A | N/A | javirock906@gmail.com |
| 12 | tambayanreplay.su | N/A | N/A | javirock906@gmail.com |
| 13 | ofwshow.ru | Google Adsense, Google LLC | ca-pub-2636869081690729 | admin@aliwan.info |
| 14 | pariwiki.ch (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | Not Listed |

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 15 | pinoyflixreplay.su | Google Adsense, Google LLC | ca-pub-8204335281985188 | herpalasif@gmail.com |
| 16 | pinoyhdonline.su | Google Adsense, Google LLC | ca-pub-2213578161009237 | tahseenm57@gmail.com |
| 17 | pinoyhdreplay.ch | N/A | N/A | Not Listed |
| 18 | pinoymoviepedia.ru | N/A | N/A | Not Listed |
| 19 | pinoymovieshub.tv | N/A | N/A | 387a81858d@pinoymovieshub.tv.whoistrustee.com |
| 20 | pinoyreplaytv.su | N/A | N/A | pinoyreplaytv.su@whoisprotectservice.net |
| 21 | pinoyteleseryes.su | N/A | N/A | pinoyteleseryes.su@whoisprotectservice.net |
| 22 | pinoytoday.su | Google Adsense, Google LLC | ca-pub-5707561695084980 | malikhassan.qc@gmail.com |
| 23 | pinoytv.re | Google Adsense, Google LLC | ca-pub-2393545343030923 | Not Listed |
| 24 | pinoytvchannelreplay.su | Google Adsense, Google LLC | ca-pub-8204335281985188 | herpalasif41@gmail.com |
| 25 | pinoytvrecap.su | N/A | N/A | pinoytvrecap.su@whoisprotectservice.net |
| 26 | pinoytvtime.su | N/A | N/A | cuteqaisrani@gmail.com |
| 27 | politicsslashletters.live | mgid.com, MGID Inc. MGID UA | politicsslashletters.live | Not Listed |
| 28 | siliptv.su | Google Adsense, Google LLC | ca-pub-1617990917998321 | siliptv.su@whoisprotectservice.net |
| 29 | sinepinoy.info | popads.net Tomksoft S.A. | 3453841 | 3866317a204942648a1f2be9e298458f.protect@whoisguard.com |
| 30 | thepariwiki.com | N/A | N/A | aayanhaider8@gmail.com |

Case No. 19-cv-62693-BLOOM/Valle

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 31 | verystreamtv.com | mgid.com, MGID Inc. MGID UA | verystreamtv.com | 88cde2e1e5a94b199252f90a5f631523.protect@whoisguard.com |