# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-62693-CIV-BLOOM

ABS-CBN CORPORATION, *et al.,*

        Plaintiffs,

vs.

ABSCBNPINOY.COM, *et al.*,

        Defendants.

_____/

## PLAINTIFFS' MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

        Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International Corporation (hereinafter collectively, "Plaintiffs" or "ABS-CBN"), hereby move this Honorable Court for an entry of final default judgment against Defendants, the Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A" hereto, (collectively "Defendants") and in support thereof, submit the following Memorandum of Law.

## I.    INTRODUCTION

        ABS-CBN filed a Complaint against Defendants for federal trademark counterfeiting and infringement (Count I), false designation of origin (Count II), cybersquatting (Count III), common law unfair competition (Count IV), common law trademark infringement (Count V), and direct and secondary copyright infringement (Count VI and VII). Defendants are in default, and the prerequisites for a default judgment have been met. ABS-CBN seeks default judgment finding Defendants liable on all counts of its Complaint. ABS-CBN prays such judgment includes the entry of a permanent injunction and an award of statutory damages to Plaintiffs for Defendants' willful infringement pursuant to 15 U.S.C. § 1117(c) and 15 U.S.C. § 504(c), and cybersquatting pursuant to 15 U.S.C § 1117(d).[1] ABS-CBN also requests the Court cancel, or at ABS-CBN's

---

[1] ABS-CBN is not requesting the Court award damages against all Defendants pursuant to 15 U.S.C. § 504(c) or 15 U.S.C. § 1117(d), and is not requesting the Court award these damages jointly and severally, therefore, there is no possibility of inconsistent liability. While all Defendants infringed ABS-CBN's copyrights, only Defendant Number 6 – hdfullpinoymovies.com and Defendant Number 29 – sinepinoy.info, infringed a registered copyright. As no Defendant responded to the Complaint and ABS-CBN was unable to participate in discovery, it cannot demonstrate Defendants' actual revenue. Thus, ABS-CBN limits its

election, transfer the domain names on Schedule "A" hereto (the "Subject Domain Names") to ABS-CBN to ensure the associated websites may no longer be used as a means for illegally infringing ABS-CBN's intellectual property.

## II.   STATEMENT OF FACTS

### A.   ABS-CBN's Rights.

ABS-CBN International is a California Corporation and a subsidiary of ABS-CBN Corporation. (Declaration of Elisha J. Lawrence in Support of Plaintiffs' Application for Entry of TRO ["Lawrence Decl."] ¶ 2).[2] ABS-CBN Corporation also owns ABS-CBN Film Productions, Inc., both of which are companies organized under the laws of the Republic of the Philippines ("the Philippines") with their principal places of business therein. (Id.) ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies identified in Exhibit 2 to the Complaint, D.E. 1-3, and ABS-CBN Corporation is the owner of the unregistered copyrights in and to the movies and TV shows identified in Exhibit 3 to the Complaint, D.E. 1-4, and in paragraph 26 of the Complaint, these works are referred to herein collectively as the "Copyrighted Works." (Lawrence Decl. ¶ 4.) Plaintiffs all share exclusive rights in and to the ABS-CBN Copyrighted Works, which are produced and then initially aired in the Philippines. (Lawrence Decl. ¶¶ 4, 8; Compl. ¶¶ 26, 29.) ABS-CBN further promotes and distributes its content on the Internet. (Compl. ¶¶ 1, 30; Lawrence Decl. ¶ 4.)

Plaintiff ABS-CBN International is the owner of all rights in and to the federally registered trademarks identified in Paragraph 5 of the Lawrence Declaration (the "ABS-CBN Registered Marks") as well as the common law trademark identified in Paragraph 6 (the "Common Law Mark") (collectively, the "ABS-CBN Marks"), which are used in connection with high quality broadcast distribution services of television programs and movies in the categories identified therein. (See Lawrence Decl. ¶¶ 5-6; see also United States Trademark Registrations of the ABS-

---

request as to all other Defendants to the monetary judgment requested in Count I, to judgment on the claims, and the equitable relief requested in the Complaint. Additionally, only Defendant Number 1 - abscbnpinoy.com registered a cybersquatting domain name in violation of 15 U.S.C. § 1125(d), and thus ABS-CBN limits its request as to Defendant Number 1 to the monetary judgment requested in Count I and III, to judgment on the claims, and the equitable relief requested in the Complaint.

[2] On October 31, 2019, Plaintiffs filed their Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "Application for TRO"), together with supporting exhibits and declarations, which are incorporated herein by reference, D.E. 5.

CBN Registered Marks at issue attached as Ex. 1 to the Compl., D.E. 1-2.) All Plaintiffs share exclusive rights in and to the ABS-CBN Marks. (Lawrence Decl. ¶ 6.) Moreover, all Plaintiffs are licensed to use and enforce the ABS-CBN Marks. (Id.) The ABS-CBN Marks are symbols of ABS-CBN's quality, reputation, and goodwill and have never been abandoned. (Lawrence Decl. ¶ 9.) Furthermore, ABS-CBN has extensively used, advertised, and promoted the ABS-CBN Marks in the United States in association with its services, and has carefully monitored and policed the use of the ABS-CBN Marks. (Id. at ¶ 6-9.) As a result of ABS-CBN's efforts, members of the consuming public readily identify services and audiovisual content bearing the ABS-CBN Marks as being quality services and content sponsored and approved by ABS-CBN. (Id.) Accordingly, the ABS-CBN Marks have achieved secondary meaning as identifiers of high quality broadcast distribution services and audiovisual content.

**B. Defendants' Infringing Acts.**

As alleged by ABS-CBN, admitted by default, and established by the evidence submitted herewith, Defendants operated and controlled the Internet websites operating under the Subject Domain Names.[3] (See Ex. 3 to the Compl., D.E. 1-4.) As such, Defendants are the active, conscious, and dominant force infringing the ABS-CBN Marks and facilitating access to illegal performances of ABS-CBN's Copyrighted Works. Defendants provided links on their respective websites to instant streams which performed ABS-CBN's Copyrighted Works. (See Ex. 3 to the Compl.) When a user clicks on a link to one of ABS-CBN's copyrighted TV shows or movies, Defendants' websites then streamed and performed the full-length version of the video, including, but not limited to ABS-CBN Copyrighted Works identified in Exhibit 2 and paragraph 26 to the Complaint. (See Declaration of Christine Ann Daley in Support of Plaintiffs' Application for Entry of TRO ["Daley Decl. in Support of TRO"] ¶ 2; see also Ex. 3 to the Compl.)

As admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of ABS-CBN's ownership of its Marks and Copyrighted Works, including its exclusive rights to use and license such intellectual property and the goodwill associated therewith. (Compl.

---

[3] The Subject Domain Names gmanetwork.su (Defendant Number 5), pinoylambinganako.su (Defendant Number 5), and pariwiki.ch (Defendant Number 14) use the supporting domain name playbox.xyz to frame advertisements on the respective Subject Domain Names. The Subject Domain Names iwanttv.su (Defendant Number 8), pinoylambingantvhd.su (Defendant Number 8), and lambingansutv.com (Defendant Number 11) use the supporting domain name biggboss123.me to frame advertisements on the respective Subject Domain Names. (See Daley Decl. ¶ 2 n. 1 and Exhibit 2 thereto, D.E. 5-3; Lawrence Decl. ¶ 13 n. 1.)

3

¶ 46, 60, 61, 92, 102, 121, 131.) Defendants do not have, nor have they ever had, the right or authority to use the ABS-CBN Marks or Copyrighted Works for any purpose. (See Lawrence Decl. ¶ 12.) However, despite their known lack of authority to do so, Defendants were engaged in the activity of promoting, advertising, and distributing ABS-CBN's Copyrighted Works under the ABS-CBN Marks using the Internet websites operating under the Subject Domain Names. (Compl. ¶¶ 1-4, 36-45, 47, 49-62, 70-74; 82-85; 90-93; 98-101; 107-108; 112-113; 117-120; 129-136; see also Lawrence Decl. ¶¶ 12-15; Ex. 3 to the Compl.) Defendants streamed the Copyrighted Works which were performed through a window within their respective websites. (Daley Decl. in Support of TRO ¶ 2.) It is believed that the Copyrighted Works were not uploaded by the websites' users because the websites appeared to be closed and did not permit users to alter the content. (Id.)

Defendants profit from the advertising revenue derived by driving users to their websites through the use of ABS-CBN's Copyrighted Works. (Daley Decl. in Support of TRO ¶¶ 4-5; Lawrence Decl. ¶ 19.) The large inventory of popular entertainment content available on Defendants' websites, including full-length copies of ABS-CBN's Copyrighted Works, were designed to attract users to the infringing content and, thus, increase Defendants' profits from the advertisers who paid Defendants based on the number of views that the advertising received. (Lawrence Decl. ¶ 19; Daley Decl. in Support of TRO ¶¶ 4-5.) The infringement-driven traffic increases the volume of advertising impressions and transactions, thus increasing revenues from the advertising services and enabling Defendants to charge advertisers higher rates. (Lawrence Decl. ¶ 19; Daley Decl. in Support of TRO ¶¶ 4-5.) ABS-CBN's counsel investigated the advertising accounts used by Defendants by inspecting the Hyper Text Markup Language ("html") Source Code for the Subject Domain Names and locating and identifying many of the advertising revenue accounts of the Defendants, as identified on Schedule "B" hereto. (Daley Decl. in Support of TRO ¶ 5. and Comp. Ex. 2 thereto, D.E. 5-4.)

ABS-CBN's representative, Elisha J. Lawrence, confirmed Defendants are not and were never entitled to use the ABS-CBN Marks or perform or otherwise distribute the ABS-CBN Copyrighted Works offered for distribution under those Marks. (See Lawrence Decl. ¶¶ 12-15.)

### C.   Procedural Background.

ABS-CBN filed its Complaint against Defendants on October 29, 2019, D.E. 1. ABS-CBN filed its Application for TRO on October 29, 2019, D.E. 5. On October 31, 2019, this Court entered a Sealed Order Granting Temporary Restraining Order (the "Temporary Restraining Order"), D.E.

10, entered on docket November 1, 2019 and subsequently converted the temporary restraining order into a Preliminary Injunction on November 13, 2019, D.E. 20. The TRO and Preliminary Injunction required, *inter alia*, certain advertising services associated with Defendants to identify and restrain all funds and to divert to a holding account for the trust of the Court all funds currently in, or which during the pendency of the Order come in to, Defendants' associated payment accounts, including all accounts tied to, associated with, or that transmit funds into Defendants' payment accounts, and divert those funds to a holding account for the trust of the Court. (See Declaration of Christine Ann Daley in Support of Plaintiffs' Motion for Entry of Final Default Judgment, ("Daley Decl."), filed herewith, ¶ 5.)

On October 29, 2019 ABS-CBN filed its Motion for Order Authorizing Alternate Service of Process, D.E. 6, which the Court granted October 31, 2019, D.E. 8. Pursuant to the Court's October 31, 2019 Order, ABS-CBN served each Defendant with a copy of its respective Summons and the Complaint via electronic mail and publication service on November 8, 2019. See D.E. 22.

The time for Defendants to respond to the Complaint has expired and Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. (Daley Decl. at ¶¶ 8-9.) To ABS-CBN's knowledge, Defendants are not infants or incompetent persons and the Servicemembers Civil Relief Act does not apply. (See id. at ¶¶ 10-11.) On December 26, 2019 ABS-CBN filed its request for Clerk's Entry of Default, D.E. 27. (Daley Decl. ¶ 12.) The Clerk entered default against each Defendant on December 27, 2019, D.E. 28. (Id.) ABS-CBN now moves the Court to grant Final Default Judgment against Defendants and submits this Motion for Final Default Judgment in compliance with the Court's December 27, 2019 Order requiring the same, D.E. 29.

## III.   ARGUMENT

### A.   Default Judgment Should Be Entered Against Defendants.

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq.*, 15 U.S.C. § § 1114 and 1125(a), and 28 U.S.C. §§ 1331, 1338(a) & (b). (Compl. ¶¶ 6-10.) Personal jurisdiction over Defendants and venue in this Judicial District are proper under 28 U.S.C. § 1391 as Defendants directed business activities toward consumers within this District and caused

harm to ABS-CBN's business through the fully accessible Internet websites operating under the Subject Domain Names and because Defendants are non-resident aliens. (Id. at ¶¶ 9, 10.)

### 1.    Default Judgment is Proper.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. By such a default, all of ABS-CBN's well-plead allegations in the Complaint are deemed admitted. See Petmed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citing Buchanan v. Bowman, 820 F.2d 359 (11th Cir. 1987)). Accordingly, the well-pled factual allegations of ABS-CBN's Complaint will be taken as true. (See id.) In this case, the Complaint, pleadings, and the declarations filed in support of ABS-CBN's Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

### 2.    Factual Allegations Establish Defendants' Liability.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, ABS-CBN must demonstrate: (1) it had prior rights to the trademarks at issue; and (2) Defendants have adopted a mark or name that was the same, or confusingly similar to ABS-CBN's trademarks, such that consumers were likely to confuse the two. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)). The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act, as discussed *supra*. PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, ABS-CBN must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with ABS-CBN, or as to the origin, sponsorship, or approval, of Defendants' services by ABS-CBN. 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability

for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

ABS-CBN's Complaint also sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), ABS-CBN must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006).  See 15 U.S.C. § 1125(d).

Whether a defendant's use of the plaintiff's trademarks created a likelihood of confusion between a plaintiff's and defendant's services is also the determining factor in the analysis of unfair competition under the common law of Florida. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983).")

ABS-CBN's Complaint also sets forth a cause of action for direct infringement of copyright pursuant to the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4). ABS-CBN must "satisfy two requirements to present a prima facie case of direct copyright infringement: (1) they must show ownership of the allegedly infringed material, and (2) they must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). See also Disney Enters. v. Hotfile Corp., Case No. 11-20427-CIV-Williams, 2013 U.S. Dist. LEXIS 172339, at *94 (S.D. Fla. 2013).

Finally, to prevail on a claim of contributory infringement of copyright, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement. See Tiffany (NJ), LLC v. Liu Dongping, 2010 U.S. Dist. LEXIS 121232, 14-17 (S.D. Fla. Oct. 29, 2010) (citing MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)).

The well-pled factual allegations of ABS-CBN's Complaint, including specifically those pled in Paragraphs 1-4, 36-45, 47, 49-62, 70-74; 82-85; 90-93; 98-101; 107-108; 112-113; 117-120; 129-136, D.E. 1, properly allege the elements for each of the above claims. Moreover, the factual allegations in ABS-CBN's Complaint, substantiated by evidence submitted herewith, conclusively establish each Defendant's liability under each claim asserted in the Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

**B.   Plaintiffs' Requested Relief Should be Granted.**

**1.   Entry of Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)). Even in a default judgment setting, injunctive relief is available. See, e.g., Petmed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1222-23 (S.D. Fla. 2004). Defendants' failure to respond or appear in this action makes it difficult for ABS-CBN to prevent further infringement absent an injunction. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.") Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from infringing any of ABS-CBN's intellectual property rights.

Permanent injunctive relief is appropriate where ABS-CBN demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. eBay Inc., v. MercExchange, LLC, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, ABS-CBN has clearly carried its burden on each of the four factors, warranting permanent injunctive relief, because Defendants have unlawfully used ABS-CBN's

goodwill to make a profit. Accordingly, a permanent injunction against Defendants' counterfeiting and infringing activities is appropriate and necessary.

Defendants' actions merit permanent injunctive relief to protect ABS-CBN's reputation and protect consumers from deception as to the quality and source of services offered and advertised under ABS-CBN's Marks. The facts alleged in the Complaint, substantiated by the evidence herein, show Defendants infringed and induced others to infringe the ABS-CBN Marks by using them to advertise and promote illegal distribution of ABS-CBN's Copyrighted Works.

ABS-CBN will continue to suffer irreparable injury if Defendants' infringing activities are not permanently enjoined. (Lawrence Decl. ¶¶ 20-24.) In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998). See also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.") Furthermore, "harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion." See Salinger v. Colting, 607 F.3d 68, 77 and n.6, 77-83 (2nd Cir. 2010); see WPIX, Inc. v. ivi, Inc., 765 F. Supp. 2d 594, 617-621 (S.D.N.Y. 2011) (granting injunction based on streaming over Internet of copyrighted TV programming).  In any event, ABS-CBN's Complaint alleges that Defendants' unlawful actions have caused ABS-CBN irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (Compl. ¶¶ 79, 86, 88, 94, 96, 105, 110, 115, 124, 140.) Defendants have defaulted upon ABS-CBN's factual allegations in that respect.

It can hardly be said Defendants face hardship in refraining from willful infringement of ABS-CBN's intellectual property, whereas ABS-CBN faces hardship from loss of sales and inability to control its reputation. Defendants have no cognizable hardship, as they will be prohibited from promoting and offering distribution services of ABS-CBN's Copyrighted Works under ABS-CBN's Marks, which are illegal acts to begin with. ABS-CBN has suffered irreparable harm while "[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." WPIX, 765 F. Supp. 2d at 603; see, e.g., EyePartner, Inc. v. Kor

Media Group LLC, 2013 U.S. Dist. LEXIS 98370, at *16 (and cases cited therein). Finally, the public has an interest in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants' services. See Nike, Inc. v. Leslie, 227 U.S.P.Q. 574, 575 (1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The public interest is protected by issuing an injunction because ABS-CBN loses valuable incentives to continue to create programming if it continues to be deprived of (1) control over its Copyrighted Works, (2) how and where the Copyrighted Works get distributed, including Internet retransmissions through negotiated licenses and their portals, and (3) potential revenue sources. Protecting ABS-CBN's rights is consistent with, if not equivalent to, promoting the public interest. See Salinger, 607 F.3d at 82; WPIX, 765 F. Supp. 2d at 621; CBS Broad., Inc. v. EchoStar Communs. Corp., 265 F.3d 1193, 1198 (11th Cir. 2001) ("the public interest lies with protecting the rights of copyright owners."); C.B. Fleet Co. v. Unico Holdings, Inc., 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works."). The permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect ABS-CBN's property interest in its Marks and Copyrighted Works, which are the touchstones of trademark and copyright law.

As admitted by Defendants through default, (i) the Subject Domain Names are essential components of Defendants' infringing activities; and (ii) the domain names are the means by which Defendants further their infringing schemes and cause harm to ABS-CBN. (Compl. ¶ 45.) Therefore, in order to effectuate the injunction as a practical matter, the Subject Domain Names should be ordered transferred to ABS-CBN's control by Defendants, their Registrars, Registries, and/or Clerk of Court. Absent the transfer of the Subject Domain Names, Defendants will remain free to continue infringing ABS-CBN's trademarks and copyrights with impunity and will continue to benefit from the unlawful use of ABS-CBN's intellectual property.

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 , 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 724

(1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context. See, e.g., Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)). This Court and others have not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein.[4]

Defendants have created an Internet-based infringement scheme and are profiting from the deliberate misappropriation of ABS-CBN's rights. The Court should thus eliminate the means by which Defendants are conducting their unlawful activities by transferring the Subject Domain Names to ABS-CBN, where they may be disabled from further use as a platform for the illegal distribution of ABS-CBN's Copyrighted Works under counterfeits of ABS-CBN's trademarks.

## 2.      Damages as to Count I for Trademark Counterfeiting and Infringement.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of services, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00

---

[4] See ABS-CBN v. movieonline.io, Case No. 17-cv-61803-BB (Nov. 29, 2017, entered on docket Nov. 30, 2017) (awarding transfer of domain names at issue as part of grant of permanent injunction); Chanel, Inc., v. Fendona, Case No. 19-cv-60734-BB (S.D. Fla. May 23, 2019) (same); Chanel, Inc. v. 7areplica.ru, Case No. 19-cv-61532-BB (S.D. Fla. July 31, 2019, entered on docket Aug. 1, 2019) (same); Chanel, Inc. v. 100chanel.com.ua, Case No. 19-cv-60206-BB (S.D. Fla. Mar. 19, 2019) (awarding transfer of domain names at issue as part of grant of permanent injunction); Chanel, Inc. v. bestaaachanel.com, Case No. 18-cv-63018-BB (S.D. Fla. Feb. 5, 2019) (same); Tiffany (NJ) LLC v. discountiffany.com, Case No. 18-cv-62831-BB (S.D. Fla. Jan. 23, 2019) (same); adidas AG v. 2017yeezy.com, Case No. 18-cv-62636-BB (S.D. Fla. Jan. 11, 2019) (same); Richemont International SA v. montblancpenseshop.co, Case No. 18-cv-62421-BB (S.D. Fla. Dec. 11, 2018) (same).

nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1).[5] In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), ABS-CBN elects to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. Petmed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990). An award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. See, e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.) See also Petmed Express, Inc., 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. Petmed Express, Inc., 336 F. Supp. 2d at 1220. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's rights. See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. See Petmed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true)). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

The ABS-CBN Marks are renowned worldwide as identifiers of high quality broadcast distribution services, and Defendants clearly wrongfully used those marks for the purpose of trading upon ABS-CBN's goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to

---

[5] ABS-CBN's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), a cause of action under Florida's common law of unfair competition (Count IV), and a cause of action under Florida's common law of trademark infringement (Count V). As to these Counts, the allowed scope of monetary damages is encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on these Counts should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

infer that Defendants intended to cause confusion and benefit from ABS-CBN's reputation, to ABS-CBN's detriment. See Petmed Express, Inc., 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendant's use of such a mark that was confusingly similar). Moreover, in this District, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

The evidence establishes Defendants intentionally copied the ABS-CBN Marks for the purpose of deriving the benefit of ABS-CBN's world-famous reputation. Defendants defaulted on ABS-CBN's allegations of willfulness. (Compl. ¶¶ 1, 5, 61, 102, 122, 139.) See Arista Records, Inc., 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the Defendant's default.) As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, and advertised services and copyrighted content under marks which were in fact counterfeits of at least one of the ABS-CBN Marks.  (Compl. ¶¶ 1-4, 36-45, 47, 49-62, 70-74; 82-85; 90-93; 98-101; 107-108; 112-113; 117-120; 129-136; see generally Ex. 3 to the Compl., D.E. 1-4, relevant captures of Defendants' websites operating under their Subject Domain Names, showing infringements of the ABS-CBN Marks).  Based on the above considerations, ABS-CBN respectfully suggests the Court award statutory damages of $1,000,000.00 against each Defendant.

ABS-CBN's requested damage should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe ABS-CBN's trademarks, compensate ABS-CBN, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong. Rec. H12076, H12083; Petmed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court, and other courts in this District have granted statutory damages under the Lanham Act in a manner similar to ABS-CBN's request herein.[6]

---

[6] See; ABS-CBN v. movieonline.io, Case No. 17-cv-61803-BB (Nov. 29, 2017, entered on docket Nov. 30, 2017) (awarding Plaintiff $1,000,000.00 against each Defendant); Chanel, Inc. v.

### 3.    Plaintiffs' Damages as to Count III for Cybersquatting Against Defendant Number 1 – abscbnpinoy.com

ABS-CBN's Complaint further sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). As admitted by default, and established by the evidence submitted herewith, Defendant Number 1, abscbnpinoy.com ("Defendant Number 1") has acted with the bad faith intent to profit from the ABS-CBN Mark "ABS-CBN," Registration Number 2,334,131, and the goodwill associated therewith by registering its Subject Domain Name "abscbnpinoy.com," which is identical, confusingly similar to, or dilutive of ABS-CBN Mark Number 2,334,131. (Compl. ¶¶ 63-67, 98-102.) The abscbnpinoy.com domain name incorporates the ABS-CBN Mark Number 2,334,131 in its entirety followed by the descriptive "pinoy" term, rendering the domain name nearly identical to ABS-CBN Mark Number 2,334,131. Even minor variations to a plaintiff's mark in a domain name can be confusingly similar. See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion."); DaimlerChrysler v. The Net Inc., 388 F.3d 201, 205-06 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder."). Furthermore, it is indisputable that the ABS-CBN Mark Number 2,334,131 is famous and distinctive. ABS-CBN's genuine services are among the best-selling entertainment services in the Filipino community, and the ABS-CBN Marks enjoy widespread recognition and are prominent in the minds of the consuming public. (See Lawrence Decl. ¶¶ 9-10.)

As to the issue of bad faith, the ACPA lists nine factors in determining whether a domain name is used in "bad faith" with an intent to profit from a mark in registering or using the mark in

---

100chanel.com.ua, Case No. 19-cv-60206-BB (S.D. Fla. Mar. 19, 2019) (awarding Plaintiff $1,000,000.00 against each Defendant); Chanel, Inc. v. bestaaachanel.com, Case No. 18-cv-63018-BB (S.D. Fla. Feb. 5, 2019) (awarding Plaintiff $1,000,000.00 against each Defendant); Tiffany (NJ) LLC v. discounttiffany.com, Case No. 18-cv-62831-BB (S.D. Fla. Jan. 23, 2019) (awarding Plaintiff $1,000,000.00 against each Defendant); adidas AG v. 2017yeezy.com, Case No. 18-cv-62636-BB (S.D. Fla. Jan. 11, 2019) (awarding Plaintiff $1,000,000.00 against each Defendant); Richemont International SA v. montblancpenseshop.co, Case No. 18-cv-62421-BB (S.D. Fla. Dec. 11, 2018) (awarding Plaintiff $1,000,000.00 against each Defendant); ABS-CBN Corporation v. Pinoytfc.com, Case No. 18-cv-62083-WPD (S.D. Fla. Jan. 14, 2019, entered on docket Jan. 14, 2019) (same).

a domain name. <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i); <u>Taverna Opa Trademark Corp.</u>, 2010 WL 1838384, at *2. These factors are not meant to be exclusive and the Court may consider the context of the matter in its determination of bad faith. <u>See</u> <u>Victoria's Cyber Secret Ltd. P'ship</u>, 161 F. Supp. 2d at 1347. Examining the bad faith factors compels the conclusion that Defendants' registration and use of the abscbnpinoy.com domain name violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as Defendant Number 1 has no rights in the ABS-CBN Marks, and Defendant Number 1 has never used the ABS-CBN Marks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V) and (IX), weigh in ABS-CBN's favor. As discussed above, Defendant Number 1 has clearly intentionally incorporated the ABS-CBN Mark Number 2,334,131 in its abscbnpinoy.com domain name to divert consumers looking for ABS-CBN's Internet website to its Internet website for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of Defendant Number 1's Internet website and mistakenly believe the website is endorsed by and/or affiliated with ABS-CBN. Clearly, Defendant Number 1's registration of its abscbnpinoy.com domain name, in order to promote and/or offer for sale infringing services and pirated content, knowing the domain name is identical or confusingly similar to ABS-CBN's indisputably famous and distinctive mark ensures a likelihood of confusion among consumers. <u>See</u> <u>House Judiciary Committee Report on H.R.</u> 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act.").

Upon a finding of liability, the ACPA empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c); <u>Victoria's Cyber Secret Ltd. P'ship</u>, 161 F. Supp. 2d at 1356. Accordingly, ABS-CBN is entitled to the transfer and ownership of the abscbnpinoy.com domain name because it is confusingly similar to the ABS-CBN Mark Number 2,334,131. <u>See id.</u> at 663. Additionally, ABS-CBN may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just. 15 U.S.C. § 1117(d). ABS-CBN elects statutory damages and submits that in view of Defendant Number 1's intentional, wrongful behavior, an award in the amount of $10,000.00 it would be just. <u>See</u> <u>Taverna Opa Trademark Corp.</u>, 2010 WL 1838384, at *3 (awarding $10,000.00

in statutory damages for the infringing domain name at issue); Chanel, Inc. v. 100chanel.com.ua, Case No. 19-cv-60206-BB (S.D. Fla. March 19, 2019, entered on docket March 20, 2019); ABS-CBN Corporation v. Pinoytvtfc.com, Case No. 18-cv-62083-WPD (same).

4.      **Plaintiffs' Damages as to Count VI for Direct Infringement of Copyright.**

ABS-CBN's Complaint also sets forth a cause of action for direct infringement of copyright under 17 U.S.C. § 504 and requested statutory damages under 17 U.S.C. § 504(c). Defendants have defaulted on the well-pled allegations of Count VI. Because Defendants failed to respond to Plaintiffs' copyright infringement claim and participate in discovery, Plaintiffs cannot demonstrate Defendants' actual revenue. Accordingly, Plaintiffs elect to be awarded statutory damages within the provisions of Section 504(c) of the Copyright Act, 17 U.S.C. § 504(c), enhanced to reflect the willful nature of the Defendants' infringement, instead of an award of actual damages or profits.[7]

17 U.S.C. § 504(c) provides that a copyright owner may elect an award of statutory damages before final judgment is rendered, "to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually… in a sum of not less than $750 or more than $30,000 as the court considers just." Further, if the Court finds Defendants' copyright infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Pursuant to 17 U.S.C. § 504(c), Plaintiffs seek to recover an award of statutory damages as to Count VI of the Complaint.

The Court has wide discretion to set an amount of statutory damages. Tiffany (NJ), LLC v. Liu Dongping, 2010 U.S. Dist. LEXIS 121232, Case No. 10-61214-CIV-SEITZ (S.D. Fla. Oct. 29, 2010). Indeed, an award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by the Defendants. Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984). "A rule of liability which merely takes away the profits from an infringement would offer little discouragement

---

[7] While all Defendants infringed ABS-CBN's copyrights, only Defendant Number 6 – hdfullpinoymovies.com and Defendant Number 29 – sinepinoy.info infringed a registered copyright. As no Defendant responded to the Complaint, and Plaintiffs were unable to participate in discovery, Plaintiffs cannot demonstrate Defendants' actual revenue. Thus, ABS-CBN limits its request as to all other Defendants to the monetary judgment requested in Count I, to judgment on the claims, and the equitable relief requested in the Complaint.

to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes." F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952).

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. Cable/Home Comm'n Corp. v. Network Prods, Inc., 902 F.2d 829, 851 (11th Cir. 1990). A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. See Petmed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true)). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

Plaintiffs are renowned producers of high quality entertainment content, including television shows and movies. The evidence establishes Defendants willfully infringed Plaintiffs' copyrighted programming in order to attract visitors to their websites, so that they may in turn profit from these visitors' page views in the form of advertising revenue. In any event, Defendants have defaulted on Plaintiffs' allegations of willfulness. (Compl. ¶ 1, 5, 61, 102, 122, 139.) See Arista Records, Inc., 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default.) As such, this Court should award a significant amount of statutory damages under the Copyright Act to ensure Defendants will not continue their intentional and willful infringing activities.

ABS-CBN requests the Court award them $30,000.00 each against Defendant Number 6 – hdfullpinoymovies.com, for its infringement of the registered copyrighted work identified as "Sin Island," registration number PA2120607, and against Defendant Number 29 – sinepinoy.info, for its infringement of the registered copyrighted work identified as "Crazy Beautiful You," registration number PA 1940375, identified in Exhibit "2" to the Complaint, D.E. 1-3. (See Defendant Number 6's infringement thereof in Ex. 3 to the Comp., D.E. 1-4 at pp. 30-34; Defendant Number 29's infringement thereof in Ex. 3 to the Compl., D.E. 1-4 at pp. 199-204.) The requested amount is the highest for non-willful infringement, despite Defendants' default on allegations of

willfulness, and such an amount per work infringed has been previously awarded by this Court and other courts in this district.[8]

### a. Recovery of Statutory Damages Under Both the Lanham Act and the Copyright Act is Appropriate

Recovering under both the Lanham Act and the Copyright Act is appropriate in the instant case. Defendants herein willfully committed two wrongs, copyright and trademark infringement, and ABS-CBN has proven violations of both statutes. "A plaintiff is entitled to a separate award of statutory damages under both the Copyright Act and the Lanham Act when the defendant simultaneously infringes a copyright and trademark." Microsoft Corp. v. Online Datalink Computer, Inc. 2008 WL 1995209 *3 (S.D. Cal. 2008) (citing Nintendo of America, Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994)). See also Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 881-882 (S.D. Ohio 2007) ("successful plaintiff is entitled to recover a separate award of statutory damages under both the Copyright Act and the Lanham Act when a defendant has infringed both its trademarks and copyrights, even when by a single act."); Microsoft Corp. v. Black Cat Computer Wholesale, Inc., 269 F. Supp. 2d 118, 123-24 (W.D.N.Y. 2002) (a successful plaintiff in a combined copyright and trademark infringement action is entitled to separate awards of statutory damages under both the Copyright Act and the Lanham Act when a defendant has infringed both the owner's trademarks and copyrights."); Microsoft Corp. v. Tierra Computer, Inc., 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001) ("This Court holds that the Plaintiff's request for statutory damages under both acts is not an impermissible double recovery.").

The facts and circumstances of the instant case mirror those in Tierra Computer. Defendants held themselves out as authorized distributors for Plaintiffs' content by using the ABS-CBN Marks to promote and advertise the pirated content. "Insofar as the Lanham Act and Copyright Act provide separate remedies for distinct injuries, [Plaintiff] may seek damages under each act." Id. (See also Nintendo of America, Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1011 (9th

---

[8] ABS-CBN v. movieonline.io, Case No. 17-cv-61803-BB (Nov. 29, 2017, entered on docket Nov. 30, 2017); ABS-CBN Corporation v. Cinesilip.su, Case No. 18-cv-62942-WPD (S.D. Fla. March 27, 2019); ABS-CBN Corporation v. Pinoytfc.com, Case No. 18-cv-62083-WPD (S.D. Fla. Jan. 14, 2019, entered on docket Jan. 14, 2019); ABS-CBN Corporation v. Aceshowbiz.me, Case No. 18-cv-61553-DPG (S.D. Fla. Oct. 23, 2018, entered on docket October 24, 2018); ABS-CBN Corporation v. angprobinsyano1.com, Case No. 18-cv-61051-KMM (S.D. Fla. Aug. 31, 2018); ABS-CBN Corporation v. pinoytvtfc.com, Case No. 17-cv-61051-CMA (S.D. Fla. Dec. 28, 2017, entered on docket Dec. 29, 2017).

Cir. 1994) aff'd, 51 F.3d 281 (9th Cir.1995) See also Do It Best Corp. v. Passport Software, Inc., 2004 WL 1660814, 16 (N.D. Ill. 2004) ("The Copyright Act does not preempt the Lanham Act, or vice versa, and therefore a party may recover under both statutes.") Not only had the Defendants infringed on ABS-CBN's copyrights, but the Defendants have also negatively impacted and confused consumers' view of ABS-CBN's distribution services by using their trademarks for subpar distribution services.

"Trademark and copyright injuries are quite distinct." Sparaco v. Lawler, Matusky, Skelly Engineers, LLP, 313 F.Supp.2d 247, 255 (S.D. N.Y. 2004). The Copyright Act prohibits copying of a protected work solely for the benefit of the right holder. "The Lanham Act prohibits someone from trading on the good name and reputation that another has built in a recognizable symbol" for the benefit of both the right holder and the consuming public. Sparaco v. Lawler, Matusky, Skelly Engineers, LLP, 313 F. Supp. 2d 247, 255 (S.D.N.Y. 2004). Statutory damages for trademark infringement and copyright infringement are intended to be both compensatory and punitive. See Senate Section-by-Section Analysis, Cong Rec. S12084 (Aug. 9, 1995), reprinted in 50 PTCJ 425 (Aug. 17, 1995) An award of statutory damages under the Lanham Act and the Copyright Act is similar to separate awards of punitive damages. "Such awards are not duplicative per se." Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1460 (10th Cir. 1997).

Statutory damages also serve non-compensatory purposes, as the Defendants committed two separate acts, and caused two distinct injuries, an award of separate statutory damages for trademark and copyright infringement would be suitable. (See Lifted Research Grp., Inc. v. Behdad, Inc., Case No. 1:08-cv-0390-CKK (D.D.C Jun. 30, 2010)) It is both fair and appropriate to award statutory damages under both the Lanham Act and the Copyright Act. This Court and others in this district have entered such a judgment entering an award of statutory damages under both the Lanham Act and the Copyright Act. See ABS-CBN v. movieonline.io, Case No. 17-cv-61803-BB (Nov. 29, 2017, entered on docket Nov. 30, 2017); ABS-CBN Corporation v. Cinesilip.su, Case No. 18-cv-62942-WPD (S.D. Fla. March 27, 2019); ABS-CBN Corporation v. Pinoytfc.com, Case No. 18-cv-62083-WPD (S.D. Fla. Jan. 14, 2019, entered on docket Jan. 14, 2019); ABS-CBN Corporation v. Aceshowbiz.me, Case No. 18-cv-61553-DPG (S.D. Fla. Oct. 23, 2018, entered on docket October 24, 2018); ABS-CBN Corporation v. angprobinsyano1.com, Case No. 18-cv-61051-KMM (S.D. Fla. Aug. 31, 2018); ABS-CBN Corporation v. abscbnpinoy.com, Case No. 17-cv-61051-CMA (S.D. Fla. Dec. 28, 2017, entered on docket Dec. 29, 2017).

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International, respectfully request the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Dated: January 24, 2020                     Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: *Christine Ann Daley*
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
Christine Ann Daley (Fla. Bar. No. 98482)
T. Raquel Rodriguez-Albizu (Fla. Bar No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Christine@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Def. No. | Domain Name |
|---|---|
| 1 | abscbnpinoy.com |
| 2 | europixhd.com |
| 3 | fullasiantv.com |
| 4 | fulltagalogmovies.me |
| 5 | gmanetwork.su |
| 5 | pinoylambinganako.su |
| 5 | playbox.su |
| 6 | hdfullpinoymovies.com |
| 7 | hdreplay.su |
| 7 | pinoylambinganteleserye.su |
| 8 | iwanttv.su |
| 8 | pinoylambingantvhd.su |
| 9 | kidstva.co |
| 10 | lambinganpinoytambayantv.su |
| 10 | pinoytambayanlambingantv.su |
| 10 | pinoytvtambayanlambingan.su |
| 10 | tambayanatlambingan.su |
| 11 | lambingansutv.com |
| 11 | movierulz.stream |
| 12 | pinoylambinganteleserye.net |
| 12 | ofwpinoytvshows.su |
| 12 | pinoybaytv.su |
| 12 | pinoylambinganflix.su |
| 12 | pinoylambinganreplays.su |
| 12 | pinoytvhd.su |
| 12 | tambayanreplay.su |
| 13 | ofwshow.ru |
| 14 | pariwiki.ch |
| 15 | pinoyflixreplay.su |
| 16 | pinoyhdonline.su |
| 17 | pinoyhdreplay.ch |
| 18 | pinoymoviepedia.ru |
| 19 | pinoymovieshub.tv |
| 20 | pinoyreplaytv.su |
| 21 | pinoyteleseryes.su |
| 22 | pinoytoday.su |

| Def. No. | Domain Name |
|---|---|
| 23 | pinoytv.re |
| 24 | pinoytvchannelreplay.su |
| 25 | pinoytvrecap.su |
| 26 | pinoytvtime.su |
| 27 | politicsslashletters.live |
| 28 | siliptv.su |
| 29 | sinepinoy.info |
| 30 | thepariwiki.com |
| 31 | verystreamtv.com |

SCHEDULE "B"
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT
INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES**

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 1 | abscbnpinoy.com | N/A | N/A | fiazrasool05@gmail.com |
| 2 | Europixhd.com | N/A | N/A | 6e29f11be8db4e629157e9c87e9bc967.protect@whoisguard.com |
| 3 | fullasiantv.com | Google Adsense, Google LLC | ca-pub-3821092466638318 | f44499b1ff774de48e53a9d095329d94.protect@whoisguard.com |
| 4 | fulltagalogmovies.me | popads.net Tomksoft S.A. | 3538361 | Not listed |
| 5 | gmanetwork.su (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | waqarkhanmalghani@gmail.com |
| 5 | pinoylambinganako.su (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | waqarkhanmalghani@gmail.com |
| 5 | playbox.su | N/A | N/A | waqarkhanmalghani@gmail.com |
| 6 | hdfullpinoymovies.com | N/A | N/A | 6842447@whoisprotection.biz |
| 7 | hdreplay.su | N/A | N/A | cashorika@gmail.com |
| 7 | pinoylambinganteleserye.su | N/A | N/A | cashorika@gmail.com |
| 8 | iwanttv.su (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | pinoymovies.su@gmail.com |
| 8 | pinoylambingantvhd.su (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | pinoymovies.su@gmail.com |
| 9 | kidstva.co | Google Adsense, Google LLC | ca-pub-5302215400293420 | admin@aliwan.info |
| 10 | lambinganpinoytambayantv.su | Google Adsense, Google LLC | ca-pub-1593569282303938 | paktvsite@gmail.com |

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 10 | pinoytambayanlambingantv.su | Google Adsense, Google LLC | ca-pub-2154317906897324 | paktvsite@gmail.com |
| 10 | pinoytvtambayanlambingan.su | Google Adsense, Google LLC | ca-pub-2154317906897324 | paktvsite@gmail.com |
| 10 | tambayanatlambingan.su | N/A | N/A | paktvsite@gmail.com |
| 11 | lambingansutv.com (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | Not listed |
| 11 | movierulz.stream | popads.net Tomksoft S.A. | 3603072 | abuse@movierulz.stream |
| 12 | ofwpinoytvshows.su | Google Adsense, Google LLC | ca-pub-3388398459928305 | javirock906@gmail.com |
| 12 | pinoybaytv.su | Google Adsense, Google LLC | ca-pub-6052202555377760 | javirock906@gmail.com |
| 12 | pinoylambinganflix.su | Google Adsense, Google LLC | ca-pub-1256604383590629 | javirock906@gmail.com pinoylambinganflix@gmail.com |
| 12 | pinoylambinganteleserye.net | Google Adsense, Google LLC | ca-pub-1715847515243954 | javirock906@gmail.com |
| 12 | pinoytvhd.su | Google Adsense, Google LLC | ca-pub-7772575731834210 | javirock906@gmail.com |
| 12 | pinoylambinganreplays.su | N/A | N/A | javirock906@gmail.com |
| 12 | tambayanreplay.su | N/A | N/A | javirock906@gmail.com |
| 13 | ofwshow.ru | Google Adsense, Google LLC | ca-pub-2636869081690729 | admin@aliwan.info |
| 14 | pariwiki.ch (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | Not Listed |

24

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 15 | pinoyflixreplay.su | Google Adsense, Google LLC | ca-pub-8204335281985188 | herpalasif@gmail.com |
| 16 | pinoyhdonline.su | Google Adsense, Google LLC | ca-pub-2213578161009237 | tahseenm57@gmail.com |
| 17 | pinoyhdreplay.ch | N/A | N/A | Not Listed |
| 18 | pinoymoviepedia.ru | N/A | N/A | Not Listed |
| 19 | pinoymovieshub.tv | N/A | N/A | 387a81858d@pinoymovieshub.tv.whoistrustee.com |
| 20 | pinoyreplaytv.su | N/A | N/A | pinoyreplaytv.su@whoisprotectservice.net |
| 21 | pinoyteleseryes.su | N/A | N/A | pinoyteleseryes.su@whoisprotectservice.net |
| 22 | pinoytoday.su | Google Adsense, Google LLC | ca-pub-5707561695084980 | malikhassan.qc@gmail.com |
| 23 | pinoytv.re | Google Adsense, Google LLC | ca-pub-2393545343030923 | Not Listed |
| 24 | pinoytvchannelreplay.su | Google Adsense, Google LLC | ca-pub-8204335281985188 | herpalasif41@gmail.com |
| 25 | pinoytvrecap.su | N/A | N/A | pinoytvrecap.su@whoisprotectservice.net |
| 26 | pinoytvtime.su | N/A | N/A | cuteqaisrani@gmail.com |
| 27 | politicsslashletters.live | mgid.com, MGID Inc. MGID UA | politicsslashletters.live | Not Listed |
| 28 | siliptv.su | Google Adsense, Google LLC | ca-pub-1617990917998321 | siliptv.su@whoisprotectservice.net |
| 29 | sinepinoy.info | popads.net Tomksoft S.A. | 3453841 | 3866317a204942648a1f2be9e298458f.protect@whoisguard.com |
| 30 | thepariwiki.com | N/A | N/A | aayanhaider8@gmail.com |

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 31 | verystreamtv.com | mgid.com, MGID Inc. MGID UA | verystreamtv.com | 88cde2e1e5a94b199252f90a5f63 1523.protect@whoisguard.com |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 24, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that a true copy of the foregoing was served this 24th day of January, 2020, upon the Defendants by via electronic mail to the e-mail addresses at which Defendants were served and by posting copies of the same on Plaintiffs' Website appearing at the URL http://servingnotice.com/BSNL4U/index.html.

By: ____*/Christine Ann Daley/*_____

Christine Ann Daley