# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-62693-BLOOM/Valle

ABS-CBN CORPORATION, *et al.*,

        Plaintiffs,

v.

ABSCBNPINOY.COM, *et al.*,

        Defendants.

_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs ABS-CBN Corporation's, ABS-CBN Film Productions Inc. d/b/a Star Cinema's, and ABS-CBN International's (collectively, "Plaintiffs"), Motion for Entry of Final Default Judgment Against Defendants, ECF No. [30] ("Motion"), filed on January 24, 2020. A Clerk's Default was entered against Defendants on December 27, 2019, ECF No. [28], as Defendants failed to appear, answer, or otherwise plead to the Complaint, ECF No. [1], despite having been served. *See* ECF No. [28]. The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised. For the following reasons, Plaintiffs' Motion is **GRANTED**.

### I. INTRODUCTION

Plaintiffs sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(d); direct and contributory copyright infringement under the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501, and common-law unfair competition; and common law trademark infringement. The

Complaint alleges that Defendants are advertising, promoting, distributing, and performing Plaintiffs' copyrighted works using counterfeits and confusingly similar imitations of Plaintiffs' registered trademarks within the Southern District of Florida by operating the Internet websites operating under the domain names identified on Schedule "A" attached to Plaintiffs' Motion for Entry of Final Default Judgment ("Subject Domain Names"). *See* ECF No. [30] at 21-22.

Plaintiffs further assert that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) deprived Plaintiffs of their right to determine the manner in which their trademarks are presented to consumers; (2) defrauded consumers into thinking Defendants' broadcast distribution services for pirated versions of Plaintiffs' copyrighted works are authorized by Plaintiffs; (3) deceived the public as to ABS-CBN's sponsorship of and/or association with Defendants' illegal broadcast distribution services and the websites through which such content is performed, marketed, advertised, and distributed; (4) wrongfully traded and capitalized on Plaintiffs' reputation and goodwill and the commercial value of the Plaintiffs' trademarks; and (5) wrongfully damaged Plaintiffs' ability to market their copyrighted works and distribution services and educate consumers about its brand via the Internet in a free and fair marketplace.

In the Motion, Plaintiffs seek the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, cybersquatting, common-law unfair competition, common law trademark infringement, and direct and contributory infringement of copyright. Plaintiffs further request that the Court (1) enjoin Defendants unlawful use of Plaintiffs' trademarks and copyrighted works; (2) disable, or at

---

[1] Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Schedule "A" of Plaintiffs' Motion, and Schedule "A" of this Order. *See* ECF No. [30] at 21-22.

Plaintiffs' election, transfer the domain names at issue to Plaintiffs; (3) assign all rights, title, and interest, to the domain names to Plaintiffs; and (4) award statutory damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.*; *see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default."). Upon a review of Plaintiffs' submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiffs.

## II. FACTUAL BACKGROUND[2]

Plaintiff ABS-CBN International is the registered owner of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "ABS-CBN Registered Marks"):

---

[2] The factual background is taken from Plaintiffs' Complaint, ECF No. [1], Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants, ECF No. [30], and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 036 – telephone calling card services<br>IC 038 – Television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Television broadcasting services via satellite and cable<br>IC 041 – Production and programming of television shows, entertainment and a variety of programming distributed over television, satellite and via a global computer network |

*See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 5; ECF No. [1-2] (containing Certificates of Registrations for the ABS-CBN Registered Marks at issue). ABS-CBN Registered Marks are used in connection with the creation and distribution of quality entertainment content in the categories identified above. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4-5.

Plaintiff ABS-CBN International is further the owner of all rights in and to the following common law trademark ("ABS-CBN Common Law Mark"):

| Trademark |
|---|
|  |

*See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 6. The ABS-CBN Common Law Mark is used in connection with the creation and distribution of quality entertainment content. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 6. Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law Mark are referred to as the "ABS-CBN Marks." Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International share exclusive

rights in and to the ABS-CBN Marks. Moreover, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International are all licensed to use and enforce the ABS-CBN Marks. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 6.

Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies specifically identified in Exhibit 2 to the Complaint, ECF No. [1-3]. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4. Moreover, Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights, including but not limited to those specifically identified in paragraph 26 of the Complaint and in Exhibit 3 thereto, ECF No. [1-4]. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4. Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN Film Productions, and ABS-CBN International all share exclusive rights in and to the Copyrighted Works. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 4.

Defendants, through the various Internet websites operating under their domain names identified on Schedule "A" hereto ("Subject Domain Names") have advertised, promoted, offered for distribution, distributed and/or publicly performed the Copyrighted Works under what Plaintiffs have determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the ABS-CBN Marks. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 12-15; *see also* Declaration of Christine Ann Daley, ECF No. [5-2] at 2; Exhibit 3 to the Complaint, ECF No. [1-4].

Although each Defendant may not copy and infringe each of Plaintiffs' trademarks for each category of services protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the ABS-CBN Marks and the Copyrighted Works at issue. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 12-15; Exhibit 3 to the Complaint,

ECF No. [1-4]. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the of the ABS-CBN Marks and/or perform or distribute the Copyrighted Works. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 12-15.

Counsel for Plaintiffs performed an investigation into the advertising accounts used by Defendants. *See* Declaration of Christine Ann Daley, ECF No. [5-2] at 5. By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names,[3] Stephen M. Gaffigan, P.A. was able to specifically locate and identify many of the advertising revenue accounts of the Defendants, which are identified on Schedule "B," along with Defendants' associated e-mail addresses as identified in the publicly available domain name registration data for Defendants or directly on Defendants' websites operating under the Subject Domain Names. *See* Declaration of Christine Ann Daley, ECF No. [5-2] at 3, 5 n.2. Plaintiffs' representative conducted a review of and visually inspected the Internet websites operating under the Subject Domain Names or the web page captures of the Subject Domain Names and determined the distribution services offered by Defendants were not genuine or authorized distribution services of Plaintiffs' Copyrighted Works. *See* Declaration of Elisha J. Lawrence, ECF No. [5-1] at 13-15.

---

[3] The Subject Domain Names gmanetwork.su (Defendant Number 5), pinoylambinganako.su (Defendant Number 5), and pariwiki.ch (Defendant Number 14) use the supporting domain name playbox.xyz to frame advertisements on the respective Subject Domain Names. The Subject Domain Names iwanttv.su (Defendant Number 8), pinoylambingantvhd.su (Defendant Number 8), and lambingansutv.com (Defendant Number 11) use the supporting domain name biggboss123.me to frame advertisements on the respective Subject Domain Names. This is believed to be done to avoid violating the terms and services agreement of their advertising companies for infringing Plaintiffs' and others' trademarks and copyrights. *See* Declaration of Christine Ann Daley, ECF No. [5-2] at 5 n.1 and Composite Exhibit 2 thereto.

### III. ANALYSIS

#### A. Claims

##### *1. Trademark Counterfeiting and Infringement Under 15 U.S.C. §1114 (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under § 32 of the Lanham Act, Plaintiffs must demonstrate that (1) they had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiffs' trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

##### *2. False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)*

To prevail on a claim for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3. *Cybersquatting Under 15 U.S.C. § 1125(d) (Count III)*

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

### 4. *Common-Law Unfair Competition and Trademark Infringement (Counts IV and V)*

Whether a defendant's use of a Plaintiffs' trademarks created a likelihood of confusion between the Plaintiffs' and the defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed*

*Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### 5. Direct Infringement of Copyright (Count VI)

To prevail on a claim of direct infringement of copyright pursuant to the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4), Plaintiffs must "satisfy two requirements to present a prima facie case of direct copyright infringement: (1) they must show ownership of the allegedly infringed material, and (2) they must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Disney Enters. v. Hotfile Corp.*, No. 11-20427-CIV-Williams, 2013 U.S. Dist. LEXIS 172339, at *94 (S.D. Fla. 2013).

### 6. Contributory Infringement of Copyright (Count VII)

To establish a cause of action for secondary (contributory) infringement of copyright, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement. *See Tiffany (NJ), LLC v. Liu Dongping*, No. 10-61214-CIV-SEITZ, 2010 U.S. Dist. LEXIS 121232, *14-17 (S.D. Fla. Oct. 29, 2010) (citing *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

## B. Liability

The well-pled factual allegations of Plaintiffs' Complaint properly allege the elements for each of the claims described above. *See* ECF No. [1]. Moreover, the factual allegations in Plaintiffs' Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

## C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See, e.g.*, *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the

continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [1]. Further, the Complaint alleges, and the submissions by Plaintiffs show, that the distribution services of Plaintiffs' Copyrighted Works promoted, advertised, and offered by Defendants are nearly identical to Plaintiffs' genuine distribution services for their copyrighted content and that consumers viewing Defendants' counterfeit services would actually confuse them for Plaintiffs' genuine services. *See id*. "The net effect of Defendants' actions will cause confusion of consumers at the time of initial interest and during the use of the Defendants' illegal distribution services on their websites operating under the Subject Domain Names, who will believe Defendants' websites are legitimate, authorized distributors of ABS-CBN's Copyrighted Works or are authorized and/or approved by ABS-CBN." *See* ECF No. [1] at 54.

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names because Plaintiffs cannot control the quality of what appears to be their distribution services in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill that will result if Defendants' infringing and counterfeiting and infringing actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks and copyrights, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' services. *See Nike, Inc. v.*

*Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g.*, *Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful

activities. Ordering the cancellation or transfer of the domain names at issue to Plaintiffs, where they may be disabled from further use as platforms for the illegal distribution of copyrighted works under counterfeit and infringing marks is appropriate to achieve this end.

**D. Statutory Damages for the Use of Counterfeit Marks**

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of services, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00, nor more than $200,000.00, per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a Plaintiffs' inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 U.S. Dist. LEXIS 56475, at *22-23 (S.D. Fla. Apr. 23, 2014) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-

177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record." (citations omitted)); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally copied the ABS-CBN Marks for the purpose of deriving the benefit of Plaintiffs' world-famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of service as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, and/or offered content distribution services bearing marks which were in fact counterfeits of at least one of the ABS-CBN Marks. *See* ECF No. [1]; ECF Nos. [1-2] & [1-4]. Based on the above considerations, Plaintiffs suggest the Court award statutory damages of

$1,000,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E. Damages for False Designation of Origin

Plaintiffs' Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F. Statutory Damages for Cybersquatting

Plaintiffs' Complaint also sets forth a cause of action for cybersquatting pursuant to the ACPA, 15 U.S.C. §1125(d). As admitted by default, and established by the evidence submitted, Defendant Number 1 - abscbnpinoy.com has acted with the bad-faith intent to profit from at the ABS-CBN Registered Mark, "ABS-CBN," registration number 2,334,131, and the goodwill associated with the "ABS-CBN" registered mark by registering its respective Subject Domain Name identified as "abscbnpinoy.com." *See* ECF No. [30] at 14-15. "Abscbnpinoy.com" incorporates the "ABS-CBN" registered Mark in its entirety, surrounded by descriptive term "pinoy," rendering the domain name nearly identical to the Plaintiffs' "ABS-CBN" Mark.

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c); *Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001). Accordingly, Plaintiffs are entitled to the transfer and

ownership of Defendant Number 1's abscbnpinoy.com domain name because it is confusingly similar to at least one of the ABS-CBN Marks.

Additionally, Plaintiffs may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiffs have elected statutory damages and requests, in view of Defendant Number 1's intentional, wrongful behavior, an award in the amount of $10,000.00 for Defendant Number 1's abscbnpinoy.com domain name. *See* Motion for Entry of Final Default Judgment at 123. *See Taverna Opa Trademark Corp. v. Ismail*, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages for domain name at issue). The Court finds that this amount is reasonable and awards such damages.

### G. Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiffs' Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count IV) and trademark infringement (Count V). Judgment on Count IV and Count V are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### H. Damages for Direct Infringement of Copyright

Plaintiffs' Complaint further sets forth a cause of action for direct infringement of copyright under 17 U.S.C. § 504. Section 504(c) provides that a copyright owner may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $750.00 or more than $30,000.00 as the court considers just. 17 U.S.C. § 504(c)(1). In addition, if the Court finds that Defendant's copyright infringement was willful, it may impose damages above the maximum limit up to a sum of not more than $150,000.00. Pursuant to 17 U.S.C. § 504(c), Plaintiffs have elected to recover an award of statutory damages as to Count VI of the Complaint.

The Court has wide discretion to set an amount of statutory damages. *Tiffany (NJ), LLC*, 2010 U.S. Dist. LEXIS 121232. An award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by the Defendant. *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). "A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally infringed Plaintiffs' Copyrighted Works for the purpose of deriving the benefit of the value of Plaintiffs' Copyrighted Works in order to drive viewers to their Internet websites operating under the Subject Domain Names for profit. As such, the Copyright Act provides for damages in a sum of not less than $750.00 or more than $30,000.00 per work as the court considers just. 17 U.S.C. § 504(c)(1). In addition, if the Court finds that Defendants' copyright infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00." 17 U.S.C. § 504(c)(2).

The evidence in this case demonstrates that Defendant Number 6 – hdfullpinoymovies.com and Defendant Number 29 – sinepinoy.info each infringed one registered copyright of Plaintiffs. *See* ECF No. [1]; ECF No. [1-4] at 30-34, 199-204; ECF No. [30] at 16-17. Plaintiffs suggest the Court award the highest award per work for non-willful infringement, $30,000.00, despite

Defendants defaulting on Plaintiffs' allegations of willfulness. The result would be a statutory damage award of $30,000.00 against each of the above Defendants. The award is sufficient to deter Defendants and others from continuing to infringe Plaintiffs' copyrights, compensate Plaintiffs, and punish Defendants. The Court finds that this award of statutory damages falls within the permissible statutory range under 17 U.S.C. § 504(c) and is just.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [30]**, is **GRANTED** against those Defendants listed in the attached Schedule "A." Pursuant to Federal Rule of Civil Procedure 58, the Court will separately enter Default Final Judgment.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on January 27, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Def. No. | Domain Name |
|---|---|
| 1 | abscbnpinoy.com |
| 2 | europixhd.com |
| 3 | fullasiantv.com |
| 4 | fulltagalogmovies.me |
| 5 | gmanetwork.su |
| 5 | pinoylambinganako.su |
| 5 | playbox.su |
| 6 | hdfullpinoymovies.com |
| 7 | hdreplay.su |
| 7 | pinoylambinganteleserye.su |
| 8 | iwanttv.su |
| 8 | pinoylambingantvhd.su |
| 9 | kidstva.co |
| 10 | lambinganpinoytambayantv.su |
| 10 | pinoytambayanlambingantv.su |
| 10 | pinoytvtambayanlambingan.su |
| 10 | tambayanatlambingan.su |
| 11 | lambingansutv.com |
| 11 | movierulz.stream |
| 12 | pinoylambinganteleserye.net |
| 12 | ofwpinoytvshows.su |
| 12 | pinoybaytv.su |
| 12 | pinoylambinganflix.su |
| 12 | pinoylambinganreplays.su |
| 12 | pinoytvhd.su |
| 12 | tambayanreplay.su |
| 13 | ofwshow.ru |
| 14 | pariwiki.ch |
| 15 | pinoyflixreplay.su |
| 16 | pinoyhdonline.su |
| 17 | pinoyhdreplay.ch |
| 18 | pinoymoviepedia.ru |
| 19 | pinoymovieshub.tv |
| 20 | pinoyreplaytv.su |
| 21 | pinoyteleseryes.su |
| 22 | pinoytoday.su |

| Def. No. | Domain Name |
|---|---|
| 23 | pinoytv.re |
| 24 | pinoytvchannelreplay.su |
| 25 | pinoytvrecap.su |
| 26 | pinoytvtime.su |
| 27 | politicsslashletters.live |
| 28 | siliptv.su |
| 29 | sinepinoy.info |
| 30 | thepariwiki.com |
| 31 | verystreamtv.com |

**SCHEDULE "B"**
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT**
**INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES**

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 1 | abscbnpinoy.com | N/A | N/A | fiazrasool05@gmail.com |
| 2 | Europixhd.com | N/A | N/A | 6e29f11be8db4e629157e9c87e9bc967.protect@whoisguard.com |
| 3 | fullasiantv.com | Google Adsense, Google LLC | ca-pub-3821092466638318 | f44499b1ff774de48e53a9d095329d94.protect@whoisguard.com |
| 4 | fulltagalogmovies.me | popads.net Tomksoft S.A. | 3538361 | Not listed |
| 5 | gmanetwork.su (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | waqarkhanmalghani@gmail.com |
| 5 | pinoylambinganako.su (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | waqarkhanmalghani@gmail.com |
| 5 | playbox.su | N/A | N/A | waqarkhanmalghani@gmail.com |
| 6 | hdfullpinoymovies.com | N/A | N/A | 6842447@whoisprotection.biz |
| 7 | hdreplay.su | N/A | N/A | cashorika@gmail.com |
| 7 | pinoylambingantelseserye.su | N/A | N/A | cashorika@gmail.com |
| 8 | iwanttv.su (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | pinoymovies.su@gmail.com |
| 8 | pinoylambingantvhd.su (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | pinoymovies.su@gmail.com |
| 9 | kidstva.co | Google Adsense, Google LLC | ca-pub-5302215400293420 | admin@aliwan.info |
| 10 | lambinganpinoytambayantv.su | Google Adsense, Google LLC | ca-pub-1593569282303938 | paktvsite@gmail.com |

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 10 | pinoytambayanlambingantv.su | Google Adsense, Google LLC | ca-pub-2154317906897324 | paktvsite@gmail.com |
| 10 | pinoytvtambayanlambingan.su | Google Adsense, Google LLC | ca-pub-2154317906897324 | paktvsite@gmail.com |
| 10 | tambayanatlambingan.su | N/A | N/A | paktvsite@gmail.com |
| 11 | lambingansutv.com (framed on biggboss123.me) | Google DoubleClick, Google LLC | https://biggboss123.me/ | Not listed |
| 11 | movierulz.stream | popads.net Tomksoft S.A. | 3603072 | abuse@movierulz.stream |
| 12 | ofwpinoytvshows.su | Google Adsense, Google LLC | ca-pub-3388398459928305 | javirock906@gmail.com |
| 12 | pinoybaytv.su | Google Adsense, Google LLC | ca-pub-6052202555377760 | javirock906@gmail.com |
| 12 | pinoylambinganflix.su | Google Adsense, Google LLC | ca-pub-1256604383590629 | javirock906@gmail.com pinoylambinganflix@gmail.com |
| 12 | pinoylambinganteleserye.net | Google Adsense, Google LLC | ca-pub-1715847515243954 | javirock906@gmail.com |
| 12 | pinoytvhd.su | Google Adsense, Google LLC | ca-pub-7772575731834210 | javirock906@gmail.com |
| 12 | pinoylambinganreplays.su | N/A | N/A | javirock906@gmail.com |
| 12 | tambayanreplay.su | N/A | N/A | javirock906@gmail.com |
| 13 | ofwshow.ru | Google Adsense, Google LLC | ca-pub-2636869081690729 | admin@aliwan.info |
| 14 | pariwiki.ch (framed on playbox.xyz) | Google DoubleClick, Google LLC | http://playbox.xyz/ | Not Listed |

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 15 | pinoyflixreplay.su | Google Adsense, Google LLC | ca-pub-8204335281985188 | herpalasif@gmail.com |
| 16 | pinoyhdonline.su | Google Adsense, Google LLC | ca-pub-2213578161009237 | tahseenm57@gmail.com |
| 17 | pinoyhdreplay.ch | N/A | N/A | Not Listed |
| 18 | pinoymoviepedia.ru | N/A | N/A | Not Listed |
| 19 | pinoymovieshub.tv | N/A | N/A | 387a81858d@pinoymovieshub.tv.whoistrustee.com |
| 20 | pinoyreplaytv.su | N/A | N/A | pinoyreplaytv.su@whoisprotectservice.net |
| 21 | pinoyteleseryes.su | N/A | N/A | pinoyteleseryes.su@whoisprotectservice.net |
| 22 | pinoytoday.su | Google Adsense, Google LLC | ca-pub-5707561695084980 | malikhassan.qc@gmail.com |
| 23 | pinoytv.re | Google Adsense, Google LLC | ca-pub-2393545343030923 | Not Listed |
| 24 | pinoytvchannelreplay.su | Google Adsense, Google LLC | ca-pub-8204335281985188 | herpalasif41@gmail.com |
| 25 | pinoytvrecap.su | N/A | N/A | pinoytvrecap.su@whoisprotectservice.net |
| 26 | pinoytvtime.su | N/A | N/A | cuteqaisrani@gmail.com |
| 27 | politicsslashletters.live | mgid.com, MGID Inc. MGID UA | politicsslashletters.live | Not Listed |
| 28 | siliptv.su | Google Adsense, Google LLC | ca-pub-1617990917998321 | siliptv.su@whoisprotectservice.net |
| 29 | sinepinoy.info | popads.net Tomksoft S.A. | 3453841 | 3866317a204942648a1f2be9e298458f.protect@whoisguard.com |
| 30 | thepariwiki.com | N/A | N/A | aayanhaider8@gmail.com |

| Def. No. | Domain Name | Advertising Service/Platform | Account Identifier | Registrant E-mail Address |
|---|---|---|---|---|
| 31 | verystreamtv.com | mgid.com, MGID Inc. MGID UA | verystreamtv.com | 88cde2e1e5a94b199252f90a5f63 1523.protect@whoisguard.com |